UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 19-102-DLB

JOHN SMITH                                                                                           PLAINTIFF

v.                           **MEMORANDUM OPINION AND ORDER**

ANDREW SAUL, Commissioner
of the Social Security Administration                                                              DEFENDANT

* *   * *   * *   * *   * *   * *   * *   * *

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record and the parties' dispositive motions (Docs. # 13 and 17), and for the reasons set forth herein, **affirms** the Commissioner's decision.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On July 29, 2016, Plaintiff John Smith filed an application for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI of the Social Security Act, alleging disability beginning in December 2015.  (Tr. 348-350).  Plaintiff was forty-eight years old at the onset of his disability and he alleged in his application that he was unable to work due to hand pain, rheumatoid arthritis, and back pain.  (Tr. 348, 360).  His application was denied initially on October 6, 2016, (Tr. 245), and was denied upon reconsideration on January 11, 2017, (Tr. 262-264).   At Plaintiff's request, an administrative hearing was conducted, (Tr. 161-192), and on November 29, 2018, Administrative Law Judge ("ALJ") Laureen Penn found that Smith was not disabled under the Social Security Act and, therefore, not entitled to benefits. (Tr. 136-155).  The decision

1

became the final decision of the Commissioner on September 19, 2019 when the Appeals Council denied Plaintiff's request for review.  (Tr. 1-5).

## II. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)).  "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)).  Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations.  *Id.* (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).  Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side.  *Id.*; *see also Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).  In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole."  *Cutlip*, 25 F.3d at 286.

**B.     The ALJ's Determination**

To determine disability, an ALJ conducts a five-step analysis. *Walters*, 127 F.3d at 529. Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *See id.* (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant for Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, the ALJ found that Smith had not engaged in substantial gainful activity since December 23, 2015—the alleged onset date of his disability. (Tr. 142). At Step Two, the ALJ determined that Plaintiff has the following severe impairments: status post left carpal tunnel release; left Guyon canal syndrome; left pronator syndrome; cubital tunnel decompression; hand arthropathy; minimal bulging disc at C4-5, C5-6, C6-7 with borderline central canal stenosis; cervical radiculopathy; obstructive sleep apnea on CPAP; rheumatoid arthritis; neuropathy; degenerative arthritis in low back and hip; and du pan contractures bilaterally. (*Id.*). The ALJ found that Plaintiff's other impairments were not severe, including acid reflux, benign prostatic hyperplasia, and major depressive disorder. (Tr. 142-143). In addition, the ALJ found that Plaintiff has a "non-medically

3

determinable impairment" of midline thoracis back pain. (Tr. 144-145). At Step Three, the ALJ concluded that Smith does not have an impairment or combination of impairments that meet or medically equal the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 145).

The ALJ then found, between Steps Three and Four, that Plaintiff possesses the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following modifications and limitations:

> [H]e can lift and carry 20 pounds occasionally, and 10 pounds frequently. He can stand and walk for 6 hours. He can sit for 6 hours. He can occasionally stoop, crouch, kneel, and crawl. He can occasionally climb stairs and ramps but cannot climb ladders, ropes, or scaffolds. He can occasionally reach overhead bilaterally. He needs to avoid concentrated exposure to hazards, including heights and machinery. He can frequently finger, and occasionally handle and grasp bilaterally.

(Tr. 146). Based on this finding, the ALJ concluded at Step Four that Plaintiff is unable to perform his past work as a line repairer, which is classified as skilled work at the heavy exertional level. (Tr. 153).

However, at Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Smith is able to perform. (Tr. 153-154). Based on the testimony of a vocational expert, the ALJ found that Plaintiff could perform the following representative occupations: usher, photo finish counter clerk, furniture rental consultant, and tanning salon attendant. (Tr. 154). Accordingly, the ALJ concluded that Plaintiff does not qualify as disabled under the Social Security Act from the alleged onset of disability date through the date of the decision. (Tr. 155).

**C. Analysis**

Plaintiff makes three arguments in his Motion for Summary Judgment: (1) the ALJ erred in finding, at Step Five, that 118,000 jobs in the national economy constitutes a

significant number of jobs, (2) the ALJ erred in accepting the testimony of the vocational expert regarding the use of hands for light work, and (3) the ALJ's finding with respect to Plaintiff's RFC "fails to adequately describe the claimant as it is inconsistent with the medical evidence of record." (Doc. # 13-1 at 1). For the reasons stated below, the Court finds that the ALJ's opinion was supported by substantial evidence.

### 1. *Availability of jobs in the national economy*

Plaintiff argues that the ALJ's reasoning in support of her conclusion that there are a significant number of jobs in the national economy was flawed because she did not take into account certain factors pursuant to *Hall v. Bowen*, 837 F.2d 272, 274-75 (6th Cir. 1988) and did not adequately explain her decision. (Doc. # 13-1 at 3-4). First, Plaintiff argues the ALJ allegedly erred in failing to consider factors such as whether the jobs identified by the vocational expert are isolated in light of Plaintiff's alleged difficulties driving. (*Id.*). Second, Plaintiff asserts that the ALJ should have taken into account the reliability of the vocational expert's testimony, because according to Plaintiff, the identified job title of "tanning salon attendant" does not exist in the Dictionary of Occupational Titles ("DOT"). (*Id.* at 5-6). Further, Plaintiff argues that the vocational expert's testimony was flawed because the expert did not explain how Plaintiff could perform the identified light, unskilled jobs considering his difficulties handling and grasping; abilities often required for that type of work. (*Id.* at 5-7).

Section 423(d) of the Social Security Act provides that a person may only be deemed disabled when he is unable to do his past work and "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives . . . ." In addition, "work which exists in the national economy" is defined as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). In *Hall*, the court explained that an ALJ

> should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.

837 F.2d at 275. Ultimately, the determination of whether a significant number of jobs exist which the claimant can perform is "left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 904 (6th Cir. 2016) (quoting *Hall*, 837 F.2d at 275). Further, "[a] vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)).

Here, the ALJ relied on the testimony of a vocational expert, Michael Dorsey, in reaching her determination that a significant number of jobs in the national economy exist, which Smith, despite his limitations, is capable of performing. (*See* Tr. 154). To reiterate, the ALJ found that Plaintiff has the following RFC:

> [H]e can lift and carry 20 pounds occasionally, and 10 pounds frequently. He can stand and walk for 6 hours. He can sit for 6 hours. He can occasionally stoop, crouch, kneel, and crawl. He can occasionally climb stairs and ramps but cannot climb ladders, ropes, or scaffolds. He can occasionally reach overhead bilaterally. He needs to avoid concentrated

> exposure to hazards, including heights and machinery. He can frequently finger, and occasionally handle and grasp bilaterally.

(Tr. 146). During the administrative hearing, the ALJ posed a hypothetical question to the vocational expert, inquiring whether a person with the same age, education, and experience as Plaintiff, who faced the above limitations, could perform other work in the national economy (*i.e.*, work besides Plaintiff's past work as a lineman). (Tr. 188-189). The expert answered in the affirmative, identifying the jobs of usher (35,000 jobs), photo finishing counter clerk (24,000 jobs), furniture rental consultant (40,000 jobs), and tanning salon attendant (19,000 jobs). (Tr. 189).

The ALJ did not err in relying on this testimony to conclude that a significant number of jobs exist in the national economy which Plaintiff is capable of performing. More specifically, the ALJ was not required to consider whether the identified jobs were available near Plaintiff's residence. As noted above, the Social Security Act specifically states that a person is disabled when he is unable to perform "work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives . . . ." 42 U.S.C. § 423(d)(2)(A). In addition, an ALJ may consider jobs available nationwide and/or regionally in making her determination. *Id.* Although *Hall* suggests that an ALJ *may* consider "the isolated nature of the jobs," 837 F.2d at 275, she is not required to.

Regardless, and contrary to Plaintiff's argument, the circumstances of this case do not compel a conclusion different from the one reached by the ALJ. Plaintiff asserts that his limited ability to drive necessitated the ALJ's consideration of the particular locale of the jobs identified by the expert. (Doc. # 13-1 at 4-5). Smith testified at the hearing that if he has to drive over thirty minutes, he has to stop and sit for at least fifteen to twenty

7

minutes with his arms down due to pain and tingling/numbness in his hands. (Tr. 176). Yet, he also testified that he picks his son up from school (three miles away), (Tr. 182), and in a 2016 Functional Report indicated that he can drive places independently and goes shopping once every couple of weeks, (Tr. 382). Further, based on the medical evidence presented, the ALJ concluded that "claimant's upper extremity impairments were adequately managed with medication" and surgery—a finding (as discussed below) that is supported by substantial evidence. (Tr. 147).

Nor was the ALJ required to expressly consider the reliability of the vocational expert's testimony. The Court agrees that the specific position of "tanning salon attendant"—one of the jobs identified by the expert—does not appear to exist in the DOT, and that the closest match—"reducing-salon attendant" (DOT 359.567-010)—corresponds to medium work, beyond Plaintiff's capabilities. Nevertheless, Plaintiff does not take issue with the three other identified jobs, and the Court does not find unreasonable the ALJ's reliance on the vocational expert's testimony despite his apparent misidentification of the tanning-salon attendant job. Dorsey has been serving as a vocational expert since 2010 and had fifteen years of disability-related work experience at the time of the administrative hearing. (Tr. 438-439). Moreover, while there is no "magic number" that constitutes a "significant number" of jobs, *Hall*, 837 F.2d at 275, in this case, the vocational expert identified three other distinct jobs, totaling 99,000 positions nationally, (Tr. 189). This number "fits comfortably" within the range of jobs other courts have found to be significant. *Taskila*, 819 F.3d at 905 (collecting cases and finding 6,000 jobs nationwide to be significant under the circumstances of that case).

Also without merit is Plaintiff's argument that the ALJ improperly relied on the vocational expert's testimony because the expert did not explain how Plaintiff, with difficulty handling and grasping, could perform the identified light, unskilled jobs. Plaintiff asserts that several agency administrative decisions have noted that many unskilled light jobs require grasping, handling, and fingering. (Doc. # 13-1 at 5-6). Thus, according to Plaintiff, the vocational expert should have explained how Plaintiff could perform the identified jobs despite his difficulties handling and grasping. Yet, as noted above, "[a] vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith*, 307 F.3d at 378. The ALJ presented expert Dorsey a hypothetical describing Plaintiff's impairments, including his ability to reach overhead bilaterally, handle, and grasp only occasionally, and to finger frequently. (Tr. 188). Thus, the expert considered Plaintiff's specific limitations with regard to handling and grasping when he identified the examples of light, unskilled work Plaintiff would be capable of performing. No further explanation by the expert or ALJ was required.

### 2. *Residual Functional Capacity*

Plaintiff also asserts that the ALJ's finding with respect to Plaintiff's RFC is inconsistent with the medical evidence in the record. Plaintiff specifically asserts that the ALJ did not adequately take into account his depression, failed to assess the severity of his peyronie's disease, and inaccurately assessed his ability to lift, hold, and handle weight. (Doc. # 13-1 at 7-10). Because Plaintiff believes the RFC as established by the ALJ does not accurately describe his limitations, he argues that the vocational expert's

testimony based on that RFC cannot constitute substantial evidence to support the ALJ's conclusion that significant jobs exist in the national economy. (*Id.* at 8, 10).

### a. *Depression*

With respect to Plaintiff's depression, Plaintiff alleges that the ALJ should have considered the impact of his peyronie's disease diagnosis, a condition that causes pain and contracture/curvature of the male genitals, on his mental health. (*Id.* at 7-8). Plaintiff also argues that the ALJ did not consider his depression from August 2017 to November 2018, instead, relying on earlier reports. (*Id.* at 8). For the reasons stated below, the Court finds that the ALJ's assessment of the severity of Plaintiff's depression and the subsequent RFC determination are supported by substantial evidence in the record.

In order to assess the degree to which a mental impairment impact's a plaintiff's functioning, the ALJ evaluates the plaintiff's abilities in the following four areas, known as the "paragraph B" criteria: "[1] understand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). The ALJ assigns each category a rank of none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4).

The ALJ found that Smith has a mild limitation in each of the four areas as a result of his depression. Regarding the first area—understanding, remembering, and applying information—the ALJ noted that while Plaintiff testified that he had difficulty remembering his medications, Brittainy Shaw, M.S., who performed a consultative examination in January 2017, reported that Plaintiff "exhibited intact immediate, recent, and remote memory" and "correctly recalled 3 of 3 words after a 10 minute delay." (Tr. 143, 736). In addition, in a September 2016 Functional Report, Plaintiff indicated that he did not need

reminders to take care of personal needs or to take medications and that he followed spoken instructions "very well." (Tr. 381, 384).

In finding that Plaintiff's depression has a mild limitation on his ability to interact with others, the ALJ acknowledged Plaintiff's reported increase in irritability and anxiety as a result of his physical condition. (Tr. 143). At the same time, Plaintiff indicated that he goes to church on a weekly basis, (Tr. 383), reported never having been fired due to issues getting along with others, (Tr. 385), and stated that he gets along with authority figures "very well," (*id.*).

In support of her determination that Plaintiff has a mild limitation with respect to the third area—concentrating, persisting, and maintaining pace—the ALJ noted that during the hearing, Plaintiff testified that he has a hard time focusing, finding it difficult to read and watch television. (Tr. 143, 176). Yet, Plaintiff indicated in his 2016 Functional Report that he has no problems paying attention, (Tr. 384), and consultative examiner Brittainy Shaw, M.S. reported during her 2017 exam that Plaintiff's "attention and concentration were good," (Tr. 735).

The ALJ also found Plaintiff to have only a mild limitation in the fourth area—adapting or managing oneself. (Tr. 143). The ALJ again pointed to Plaintiff's Functional Report, which states that Plaintiff acts as a stay-at-home father for his then-three-year-old son and can perform his own personal hygiene, although it takes him longer. (Tr. 143, 380). In addition, Plaintiff told examiner Curtis Gale-Dyer, D.O. in September 2016 that he is able to take care of his own activities of daily living. (Tr. 478). The ALJ also noted that Plaintiff was prescribed psychotropic medications during office visits, but that there

11

was no indication in the record of dedicated or consistent mental health treatment. (Tr. 143).

Although the ALJ did not specifically consider the impact of Plaintiff's peyronie's disease diagnosis on the severity of his depression, the ALJ's opinion was nonetheless supported by substantial evidence. Plaintiff specifically faults the ALJ for relying on the report of Brittany Shaw, M.S. from a January 2017 examination, as opposed to the records of his treatment with primary care physician, Dr. William Nitardy, from August 2017 to November 2018, after his peyronie's diagnosis. (Doc. # 13-1 at 8). Yet, the ALJ did consider Plaintiff's treatment records with Dr. Nitardy. (Tr. 143) (citing Tr. 889-948, 1024-1031, 1035-1047). These records indicate that Plaintiff was prescribed medication for his depression, (*see e.g.*, Tr. 894, 903), but do not otherwise describe how his depression impacts his ability to function. In addition, while the Plaintiff indicated to Dr. Nitardy in August of 2018 that he was having more issues with his temper and was experiencing increased stress due to his finances and worsening health condition (following his peyronie's diagnosis), (Tr. 1035), a month later, after starting new medication, Dr. Nitardy noted improvement in Plaintiff's depression, (Tr. 1045). Thus, reviewing the record as a whole, the Court finds that the ALJ's reliance on the report of Brittany Shaw, M.S. appropriate and that the ALJ's decision concerning the severity of Plaintiff's depression and the impact of his depression on his RFC was supported by substantial evidence.

### b.   *Peyronie's disease*

Plaintiff also appears to assert that the ALJ erred by failing to consider his peyronie's disease diagnosis as a potentially severe impairment at Step Two. (*See* Doc.

# 13-1 at 7-8).  This argument is not persuasive for several reasons.  Plaintiff did not allege disability based on peyronie's disease, (Tr. 360), and only made a vague reference to "nodes on [his] privates" during the administrative hearing, (Tr. 168).  Further, Plaintiff has not provided evidence indicating this condition, first diagnosed in August 2018, (Tr. 1024), is expected to last at least twelve months and he does not argue that this condition impairs his ability to work.  See 42 U.S.C. § 423(d) (defining "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months"); see also Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [a condition], of course, says nothing about the severity of the condition."); Young v. Comm'r of Soc. Sec., No. 3:09-cv-1894, 2011 WL 2182869, at *7 (N.D. Ohio June 6, 2011) (noting that it is "up to the claimant to furnish medical and other evidence which the 'Social Security Administration can use to reach conclusions about [a claimant's] medical impairment(s) and its effect on [his] ability to work on a sustained basis.'" (quoting 20 C.F.R. § 404.1512(a)) (alterations in original).  Nor is an ALJ required to comment on every piece of evidence.  Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006) ("[I]t is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'") (quoting Loral Defense Sys.-Akron v. NLRB, 200 F.3d 436, 453 (6th Cir. 1999)).

In support of his argument that the ALJ should have considered the severity of  this impairment, Plaintiff attempts to rely on medical records related to treatment he received for peyronie's disease which were created after the ALJ's determination.  (Doc. # 13-1 at 7-8) (citing Tr. 46).  However, "substantial-evidence review of the ALJ's decision does not

13

consider new evidence submitted after that decision is rendered." *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). Such evidence may be considered only to determine whether the case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for further administrative proceedings. *Id.* Plaintiff does not specifically seek sentence-six remand in light of new evidence pertaining to his peyronie's disease. Regardless, he has not demonstrated that such new evidence is "material," and therefore, remand on that basis would be inappropriate. For sentence-six remand, a claimant must show that there is (1) new evidence, (2) which is material, and (3) that there is good cause for failure to submit the evidence to the ALJ. *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007)). New evidence is "material" "only if there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with [it]." *Id.* at 718 (quoting *Foster*, 279 F.3d at 357) (alterations in original).

Although these new records show that Plaintiff underwent surgery in May 2019 related to his peyronie's condition, (Tr. 46), a July 2019 report indicates that "the penile pain is gone completely," (Tr. 34). Thus, Plaintiff has failed to show how consideration of the new records would have a reasonable probability of causing the Commissioner to reach a different conclusion regarding his disability status. The new medical records are also immaterial because they do not relate "to the period on or before the date of the administrative law judge hearing decision," 20 C.F.R. § 404.970; but rather, constitute "[e]vidence of a subsequent deterioration or change in condition." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988)).

### c.   *Ability to lift, hold, and handle weight*

Finally, Plaintiff alleges that the ALJ's finding with respect to his ability to lift, hold, and handle weight is not supported by substantial evidence in the record. (Doc. # 13-1 at 9-10). The ALJ found that Plaintiff can lift and carry twenty pounds occasionally, and ten pounds frequently, and also found that Plaintiff can frequently finger, and occasionally handle and grasp bilaterally. (Tr. 146). To assess Plaintiff's ability to lift and handle weight, the ALJ painstakingly went through Plaintiff's medical history, recognizing signs of minimal disk degeneration in the lumbar region, bilateral numbness and tingling in his hands, curvature/contracture of his hands, arthritis in his hands, and carpal tunnel syndrome, among other issues. (Tr. 148-153). Based on a review of the record as a whole, the Court finds that the ALJ's determination with respect to Plaintiff's ability to lift, hold, and handle weight was supported by substantial evidence.

Focusing on Plaintiff's more recent records, in April 2017, Plaintiff reported to treating physician, Dr. Nitardy, that he was experiencing pain in his hands and hips, but that he had stopped taking certain medications due to a misunderstanding. (Tr. 905). Dr. Nitardy's physical exam also indicated "poor extensor and flexor strength of the fingers bilaterally." (Tr. 908). At a November 2017 visit with his rheumatologist, Plaintiff indicated that "he has felt much better and has noticed a significant difference in his symptoms," denied recent flareups of his arthritis, and indicated that his hands hurt only with repetitive movements. (Tr. 990). He also reported during that visit that he was able to sleep without hip pain. (*Id.*). A February 2018 visit with Dr. Nitardy also indicated no recent severe flares of arthritis and similarly indicated that Plaintiff's rheumatoid arthritis and neuropathy were "well-controlled" with occasional medication. (Tr. 889, 891). Although Plaintiff noted

15

a flareup of arthritis in his hands during an April 2018 visit, he had not been taking his medication, as he had gone out of town and forgotten to bring it. (Tr. 983). Then in August of 2018, Plaintiff complained only of hip pain in the evenings, noting that activity improved the symptoms. (Tr. 976). At that time, Plaintiff noted overall improvement with his rheumatoid arthritis. (*Id.*).

The ALJ noted that in September 2018, Plaintiff reported experiencing burning, tingling pain in his hands that seemed to be worsening, (Tr. 151) (citing Tr. 1042), but weighed this information against Plaintiff's other medical records from 2017 and 2018 (summarized above), which the ALJ found "show limited evidence of strength deficits or limited range of motion in his hands, or other joints," (Tr. 151). The ALJ also considered this medical evidence alongside Plaintiff's 2016 Functional Report, in which Plaintiff reported that he was a stay-at-home dad to his three-year-old child, could manage his own personal hygiene, although it took longer, could prepare basic meals for himself and his son, could do laundry, load the dishwasher, and do some yardwork. (Tr. 149-150) (citing Tr. 379-385). He also stated he could drive independently and shop every couple of weeks, that he used Facebook daily, and that he attended church weekly. (*Id.*).

Further, state agency consultant, Lisa Beihn, M.D., whose report was given "some weight" by the ALJ, opined in January 2017 that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently with unlimited handling and fingering. (Tr. 152, 224-229). Dr. Beihn specifically reported that Plaintiff was "able to make a tight fist with each hand" and that Plaintiff's "grip strength equals 5/5 bilaterally" with intact sensation in his upper and lower extremities. (Tr. 226). State examiner Curtis Gale-Dyer, D.O. reported based on a September 2016 examination that Plaintiff had full range of motion in all

peripheral joints except for his shoulders, which were able to flex only ninety degrees. (Tr. 478). Dr. Gale-Dyer also noted that although Plaintiff had nodules on his hands at the base of his fingers, he was able to fully extend and flex his fingers. (Tr. 478-479). He concluded that Plaintiff exhibited no loss of musculoskeletal strength, but that due to the issues with his hands, "he may have difficulties doing any type of prolonged activity or increased activity with them." (*Id.*). Dr. Gale-Dyer further noted that Plaintiff could still do fine motor control skills with his hands, but that he may also have difficulties with heavy lifting. (*Id.*).

Plaintiff specifically argues that the ALJ improperly relied on the fact that he held a twenty-five pound child for several hours, which had resulted in chest pain, to conclude that he "is capable of lifting 25 pounds occasionally and 10 pounds frequently," (Doc. # 13-1 at 9); however, that statement is both inaccurate and a mischaracterization of the ALJ's reasoning. The ALJ concluded that Plaintiff could lift and carry up to only *twenty* pounds occasionally and ten pounds frequently. (Tr. 150). It is apparent from the ALJ's reasoning that she determined from the fact that holding a twenty-five pound child for several hours had caused Plaintiff pain that he was capable of holding *less than* that amount and could only do so occasionally. (*Id.*). Moreover, based on the medical records discussed above and summarized by the ALJ, her determination of Plaintiff's RFC with respect to his ability to lift and hold weight was supported by substantial evidence.

Plaintiff also points to the September 2018 visit with Dr. Nitardy, during which he complained of worsening burning and tingling in his hands. (Doc. # 13-1 at 9) (citing Tr. 1042). Further, Plaintiff states that the ALJ did not give enough consideration to the April 2017 and August 2017 medical visits indicating some shaking with arm elevation,

17

numbness in his hands, poor extensor and flexor strength of his fingers on both hands, and hip pain. (*Id.* at Tr. 746, 900). Yet, the Court must affirm when the Commissioner's decision is supported by substantial evidence, even when there is evidence supporting Plaintiff's position. *Her*, 203 F.3d at 389-90. At the April 2017 visit, Plaintiff indicated he had stopped taking medication due to a misunderstanding, (Tr. 746), a fact considered by the ALJ, (Tr. 150). The ALJ also specifically considered the August 2017 and September 2018 records, (*see* Tr. 150-151), but found them to be outweighed by the other medical evidence. Finding the ALJ's decision regarding Plaintiff's RFC to be supported "by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Plaintiff's argument fails.[1] *Cutlip*, 25 F.3d at 286.

### III.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)   The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)   Plaintiff's Motion for Summary Judgment (Doc. # 13) is hereby **DENIED**;

(3)   Defendant's Motion for Summary Judgment (Doc. # 17) is hereby **GRANTED**;

(4)   This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

---

[1]   Plaintiff again improperly attempts to rely on medical records related to his condition *after* the ALJ's decision was issued. (Doc. # 13-1 at 9). The Court cannot consider these records to test the ALJ's decision under substantial evidence review. *Lee*, 529 F. App'x at 717. Further, Plaintiff has not requested a sentence-six remand so that the Commission may consider new evidence. *Wyatt*, 974 F.2d at 685.

(5)  A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 15th day of December, 2020.



Signed By:
*David L. Bunning*
United States District Judge

J:\DATA\SocialSecurity\MOOs\Ashland\19-102 John Smith MOO.docx